NELSON JONES, free person of color, *et al.*, plaintiff in error, *vs.* THE STATE, defendant in error.

1. The testimony had in the case below supports the verdict, and we discover nothing which calls for the grant of a new trial.
2. A motion to arrest the judgment was based upon the grounds: 1st, Because it is not charged in the first count of the indictment that the person or persons assaulted, was or were in the peace of the State, or that the defendants were of sound memory and discretion.  2d, Because the two counts contain charges of two crimes dissimilar in kind and character, and of a different nature.  3d, Because the assault and shooting are charged to have been committed on two persons, and 4th, Because Jones is charged as principal, and Scott as accessory, before the fact, etc., in the same count.  *Held*, that if said grounds had any substantial weight at all, they should have been taken before the case was submitted to the jury; certainly, under our Code and practice, they cannot be considered on a motion in arrest of judgment.

Assault with intent to murder.    Motion for a new trial and in arrest.    Decided by Judge VASON.    In Lee Superior Court.    September Special Term, 1867.

This was an indictment for assault with intent to murder, in these words :

" GEORGIA, LEE COUNTY: The grand jurors selected, chosen and sworn for the county of Lee, to-wit: .* * * * * in the name and behalf of the citizens of Georgia, charge and accuse Nelson Jones, a freedman, and Jim Scott, a freedman, with the offence of assault with intent to murder, on the part of said Nelson, and accessory before the fact on the part of said Jim to said crime of assault with intent to murder.

For that the said Nelson, on the fifth day of May, in the year eighteen hundred and sixty-seven, in the county aforesaid, did, unlawfully, wilfully, feloniously, and of his malice aforethought, make an assault upon Jasper Strong and Chloe Barber, with a pistol then and there held in the hands of him, the said Nelson, the said pistol being loaded with powder and ball, and while so loaded being a weapon likely to produce death, and the said pistol then and there being held, did shoot off and discharge the same at and upon said Jasper and Chloe, with the intent to kill and murder said Jasper and Chloe,

contrary to the laws of said State, the good order, peace and dignity thereof, and the said Jim Scott being absent at the time of the commission of the crime aforesaid, did procure, counsel and command said Nelson Jones to commit the said crime of assault with intent to murder, contrary to the laws of said State, the good order, peace and dignity thereof.

And the jurors aforesaid, in the name and behalf of the citizens of Georgia, further accuse and charge the said Nelson Jones with the offence of shooting at another, and the said Jim Scott with the offence of accessory, after the fact, to the crime of shooting at another. For that said Nelson Jones, on said fifth day of May, in the county aforesaid, did then and there unlawfully, and with force and arms, with a pistol loaded with powder and ball, shoot off and discharge the said pistol at and upon Jasper Strong and Chloe Barber, the said shooting not being in his own defence, or under circumstances of justification according to the priciples of the Code of Georgia, and the said Jim Scott being absent at the time of the commission of said crime of shooting at another, did procure counsel and command the said Nelson Jones to commit the said crime of shooting at another, contrary to the laws of said State, the good order, peace and dignity thereof.

Lee Superior Court, September Special Term, 1867.

N. A. SMITH, *Solicitor General.*

JASPER STRONG, *Prosecutor.*"

Upon arraignment and plea of not guilty, the defendants were tried together. The witnesses sworn, and the testimony given by them was as follows :

RICHARD HOMER: On Sunday night, about six or seven months ago, on Robert Ely's plantation, in Lee county, Georgia, at a prayer meeting, some one fired into the meeting-house and struck witness' daughter, Chloe, in the back of her head, inflicting a severe wound, about two inches deep. The person who shot was standing outside of the door and near to it, the smoke from the pistol came into the house. (It was a pistol or short gun).

Jasper Strong was preaching at the time and was standing

between the door and his (witness') daughter.  Witness don't know who shot the pistol; the person who shot ran off; it was early in the night, about two hours after dark.  Witness heard Nelson Jones say he intended to kill Jasper Strong about two weeks before the shooting; Nelson Jones was not in the meeting house at the time.  About one-half of the negroes on the place were present; witness had three daughters present; George and wife, Jasper and wife, and others whom he did not then recollect were there.  Chloe's husband was not there.

CROSS-EXAMINED.

Witness thought about fifteen were present at the meeting; the house was a double-room house of ordinary size, but the meeting was in one room.  George ———— was sitting in the door, with his back to the door; don't recollect whether the night was dark or moon-shiny.  About three weeks before, Nelson threatened to kill Jasper, and said it was because he was interfering with his wife; don't know whether it was a pistol or or a gun shot; the ball was taken out but witness did not see it; the wound was large and the ball entered the skull; Jasper was standing on the floor; witness' daughter was sitting down.

Search was made for Nelson.  When Nelson made the threat, witness asked him why it was, and he said he saw Jasper, at night, talking with his (Nelson's) wife.  Witness told him not to kill anybody.

REBUTTAL.

Nelson claimed as his wife, Hannah, but whether they were married, witness does not know.

ALFRED McLENDON: Knew nothing about the shooting; he was not at the meeting, but up at the quarter, where there was a meeting at which were himself and his wife, Elizabeth, Jim Scott and wife, Alfred McLendon, Claiborn Glaskon, Joe Salary and Elbert Ball, William Conyers and wife, and old man William, the carpenter; who else he did not recollect.

Of the hands living at the quarter, Harry, Nelson Jones and Henry Towns, were absent.  On the Sunday of the shoot-

ing, about dinner time, he had gone to hunt cattle, and laid down to rest, and heard some talking, and looking up, saw Nelson Jones and Jim Scott going down the road to Mrs. Marshall's; could not hear what they said; don't know how long they stayed at Mrs. Marshall's. That evening, Jim Scott came to witness' house and sat down in the door, and witness saw in his pocket a pistol, and he took it and looked at it and told him it was a Colt's pistol, and was well loaded with a slug. Later in the evening, Jim Scott again came to his house and sat down in the door, and asked witness if he had heard that they had divided the meeting at the yard. Witness said "No, it does not make much difference." Scott replied, "Well, let them go on, Jasper will 'go up' if he does not mind, or catch hell to-night." Witness did not see Jim Scott and Nelson together until brought up after the shooting.

### CROSS—EXAMINED.

Witness was about twenty-five feet from Jim and Nelson when they passed him going to Mrs. Marshall's. Witness suspected Jasper of intimacy with his (witness') wife. Many other blacks besides Jim Scott, had pistols, it was common, and he frequently saw them on Sunday. He did not hear Scott say he would kill Jasper, did not believe Jim Scott was going to do it, but was going to get some one else to do it. About eighteen or twenty at the meeting at the quarter, little and big; did not swear before that Harry Green and Nelson Jones were the only two absent, or does not recollect doing so. Witness took no walk with Jim Scott that evening.

### REBUTTAL.

Jim Scott tried to make witness believe that Jasper was too intimate with witness' wife, told witness that Jasper was after keeping his (witness') wife, and not to let his wife go down to the yard. On another occasion, he told witness that Jasper was going to take his wife and Gracy up to Stewart, and that the way he was going on with other people's wives, he ought to be killed, and he would not mind to cut his damned throat.

### SURREBUTTAL.

Witness might have told Major Ely that Jasper was too

Jones, *et al.*, *vs.* The State.

intimate with his wife ; his wife once told him that she once told Jasper that she would run away with him. Gracy was Lewis' wife.

CHARLES PROCKTER : Know nothing about the shooting; about breakfast time on that Sunday, he heard a pistol fire, and afterwards saw the pistol in Jim Scott's possession, and saw that it had a ball or slug in it, (it is the one now shown to witness). Jim Scott was at the meeting up at the quarter when the shooting took place ; witness knew not of Jim Scott's getting up a crowd to whip Jasper. Before the firing Jim went out of the house, was gone long enough to walk fifteen or twenty steps, and came back into the house before the firing.

GRANDVILLE BRANTLEY: The pistol shown is William's, (the carpenter's) he did not know that Jim Scott ever had it; he came to witness on Saturday night before the shooting, and asked for a slug, and witness gave him one ; it was moulded in the moulds presented.

CROSS–EXAMINED.

He thinks the slug presented was moulded in the moulds presented, for it was like the one witness moulded for Scott.

WILLIAM CONYERS: On the night of the shooting, just at dark, witness was at Nelson Jones' house, and Jim Scott came and called Nelson out and had a secret talk with Nelson about one minute ; Nelson came back to his house ; Jim Scott went off to his house, and witness went there too. This was a good while before the shooting ; he did not see Jim Scott again that night, until they were brought up to Major Ely's after the shooting. Henry Towns, Nelson Jones and Jim Scott were the only men absent from the meeting.

CROSS–EXAMINED.

Did not see Jim and Nelson do anything but talk ; shooting was about 9 o'clock ; he left Nelson in his house when witness went to meeting ; Nelson told him to go on, saying, he would come after awhile, but he came not at all.

HANNAH: She lives at Major Ely's ; took up with Nelson last Christmas, but was never married to him ; she is not liv-

ing with Nelson now; she went to church, but Nelson did not go to church, and gave no reason for not going.

### CROSS—EXAMINED.

She lived with Nelson as his wife, and they were called man and wife by the people on the place; she was never intimate with Jasper, but Nelson was jealous of her and Jasper; she never said anything to Nelson about Jasper having made improper proposals to her; she never told Mr. Ely she was intimate with Jasper.

### RE—EXAMINED.

Next morning Jim Scott asked her for the pistol, but she said she did not have it; he took from Nelson's house, that morning, when he came for the pistol, a long coat belonging to him which had been there about a week; heard Nelson, about a week or two before, say he would kill Jasper because he was intimate with her.

### CROSS—EXAMINED.

He did not say particularly what was his reason for wishing to kill Jasper. The meeting she attended was at the quarter; she dislikes Nelson now.

ALLEN HOMER: Was at Alfred's house when he heard the pistol fire, about one hundred and fifty yards from the meeting house; after the firing saw a man walking away very fast from the meeting house; don't know who he was, but he had on a long coat, and was about as high as Mr. Ely, about as high as Nelson Jones, or might be a little higher. Big Green was at witness' house.

### CROSS—EXAMINED.

He went by big Green's, knows he was there because he called him; witness was going to church when he heard the firing, and then went back to big Green's house.

S. T. HARGETT: About 4th or 5th of May was overseer on Major Ely's place in this county; was in Major Ely's house and heard a pistol fire, and soon heard some one come by the house running, and soon the negroes began collecting, and seemed excited; he told them to keep cool and Major Ely

Jones, *et al.*, *vs.* The State.

would investigate the·matter.   He ordered all the negroes to come up to Major Ely's house, and they all came except Nelson Jones; collected all the pistols from the negroes, except two from Glaskon and William.   At dinner time he went to Jim Scott's house and asked him for the pistol, who looked upon some boards for it, but did not find it.   Witness told him to search for it again, and Scott went down towards Nelson's house, and told him he could not find it ; witness told him again to search for it, and he went back into the house and called for a satchel key, and soon brought out the pistol.   It looked as if it had been recently fired, and is the same as the one presented in Court.

### · CROSS—EXAMIMED.

A much larger ball than the one presented would fit the pistol.   The pistol had every appearance of having been recently fired off.   They gathered up two or three pistols that night, one was loaded ; there are some guns on the place ; heard the man running but did not see him.

WILLIAM JOHNSON: Knew the pistol presented ; it is witness' pistol ; just before night on the day of the shooting, he loaned the pistol to Jim Scott.   In talking with Nelson, he heard Nelson say Jasper was concerned with his wife, and had to quit; about two weeks before the shooting, heard Nelson say he tried to shoot Jasper, but his pistol would not go off; Jasper and Jim Scott were on bad terms before this ; something about women ; witness tried and did settle the difficulty.

### CROSS—EXAMINED.

Witness sent the pistol to Jim Scott; it was loaded with a round ball, and he heard it shoot off in about thirty minutes.

DR. CALLAWAY: Chloe was shot in the back part of the head, the ball went through the outer part of the skull, but not clear through.   The slug presented, he thought, was the one extracted.

The State here closed, and defendants introduced no testimony.

After argument and the charge of the Court, the jury returned the following verdict:

"We, the jury, find verdict of guilty, recommending Nelson Jones to the mercy of the Court.

JOSEPH P. BLEDSOE, *Foreman.*"

The Court inquired upon which count they had found their verdict, and they said on the first count; thereupon, the Court directed the Solicitor to put the verdict in proper form. It was made then to read: "We, the jury, find Nelson Jones guilty of assault with intent to murder, and James Scott as accessory before the fact, to the crime of assault with intent to murder. We recommend Nelson Jones to mercy," and was signed by the said foreman as foreman.

The defendants, by their attorneys, moved for a new trial upon the grounds:

1st. There was no evidence that Nelson Jones shot at or assaulted Chloe Barber.

2d. There was no evidence that Nelson Jones shot at or assaulted Jasper Strong.

3d. There was no evidence that Nelson Jones shot at or assaulted Chloe Barber and Jasper Strong as charged.

4th. Because the first verdict was not a legal one, and because the Court allowed it changed, and because the verdict is against law and evidence, etc., etc.

And defendants moved in arrest of judgment on the grounds:

1st. Because it is not charged in the first count that the person or persons assaulted was or were "in the peace of the State," or that Nelson Jones or Jim Scott were "of sound memory and discretion."

2d. Because the two counts contain charges of two crimes dissimilar in kind and character, and of a different nature.

3d. Because the assault and shooting are charged to have been committed on two persons; and

4th. Because Nelson Jones is charged as principal, and Jim Scott as accessory before the fact, etc., in the same count.

The Court refused the new trial and refused to arrest the judgment, and these refusals are assigned as error.

Summerford, Adm'r, *vs.* Gilbert.

What was the sentence, or whether there was one, does not appear by the records as brought up. All points were waived in the argument here, except upon the sufficiency of the indictment.

GEORGE KIMBROUGH and C. T. GOODE, for plaintiffs in error.

N. A. SMITH, Solicitor General, for the State.

HARRIS, J.

1. The testimony had in the case below supports the verdict, and we discover nothing which calls for the grant of a new trial.

2. The grounds upon which an arrest of judgment was sought below, if they have any substantial weight at all, should have been taken before the cause was submitted to the jury. They certainly, under our Code and practice, cannot be considered on a motion to arrest the judgment.

Judgment affirmed.